IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

| | |
|---|---|
| OLIVER EMANUEL PEARSON, )<br><br>Plaintiff, )<br><br>vs. )<br><br>FLATHEAD COUNTY, et al., )<br><br>Defendants. ) | Cause No. CV 10-108-M-DWM-JCL<br><br><br>ORDER and<br>FINDINGS AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE |

_____

On September 15, 2010, Plaintiff Oliver Pearson filed this action under 42 U.S.C. § 1983.  Pearson is a state prisoner proceeding pro se.  The Complaint is subject to screening and dismissal prior to the Defendants' appearance.  28 U.S.C. §§ 1915(c)(2), 1915A(a), (b); 42 U.S.C. § 1997e(c), (g).

## I. Motion to Proceed In Forma Pauperis

Pearson lacks funds to prepay the filing fee.  Mot. (doc. 1) at 3-5.  His motion to proceed in forma pauperis will be granted.

## II. Pearson's Allegations

Pearson states that, on July 12, 2008, he and his wife were involved in a one-vehicle rollover accident.  Both sustained serious injuries.  An attending physician

1

diagnosed Pearson with a closed-head injury and post-concussion syndrome.  On July 14, 2008, Pearson was arrested and charged with three felonies emanating from the accident.  Pursuant to a plea agreement, he pled guilty to leaving the scene of an accident.  Compl. (doc. 2) at 4; Mot. for New Trial at 1-2 (doc. 2-1 at 5-6).[1]

Pearson alleges that he was "denied the opportunity to be seen 'in person' by a mental health professional" while he was a pretrial detainee at the Flathead County Detention Center in 2008.  He made a sick-call request on November 17, 2008, and was seen by a nurse on November 25, 2008.  Id.; Receipt at 1 (doc. 2-1 at 4).  He asked to "be evaluated by" a mental health professional.  He made the same request again on December 29, 2008.  On both occasions, he was "denied accommodation," Compl. at 4, and "told I had to wait till where I was going," that is, until he entered the custody of the Department of Corrections at a long-term facility.  Id.; Memo at 1 (doc. 2-1 at 3).  He entered his guilty plea on January 22, 2009.  Pearson Aff. at 1 ¶ 5 (doc. 2-1 at 11).

When Pearson arrived at prison, he was evaluated by a doctor, diagnosed with post-traumatic stress disorder, and began receiving treatment.  At that point, he "began recalling the events that occurred on July 12, 2008," and "realized he was not the one

----

[1]  The motion for a new trial was filed in the criminal case in the state trial court.

driving the vehicle when the accident occurred."  Mot. for New Trial at 3 (doc. 2-1 at

7).  "Because [Pearson] was suffering from post-traumatic stress, he was not able to

access this information until after he entered his guilty plea."  Id.

Pearson contends that he suffers "ongoing mental and emotional distress."

Compl. at 6.  He believes that, "had I gotten the treatment at the time I was in the

County Jail, there would have been a good possibility that I would not have been

wrongfully incarcerated."  For his relief, he seeks two million dollars in compensatory

damages and nominal punitive damages.  Id.

### III. Analysis

States and counties have a constitutional obligation to provide adequate medical

care to persons in their custody, including mental health care, regardless of whether

the person has been convicted or is detained pending trial.  Estelle v. Gamble, 429

U.S. 97, 104 (1976); see also McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.

1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th

Cir. 1997).  To state a claim for violation of that obligation, Pearson must show that

someone responded to his mental health needs with "deliberate indifference," despite

knowing that his lack of access to a mental health professional posed "a substantial

risk of serious harm" to him.  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998)

(quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)).  The person responsible for

denying adequate care "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

Further, because Pearson alleges delay of mental health treatment, not total deprivation, he must establish that the delay itself caused him harm. <u>McGuckin</u>, 974 F.2d at 1060 (citing <u>Shapley v. Nevada Board of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)). Dissatisfaction or disagreement with the nature of medical assistance provided does not state a claim. <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996); <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989) (citing <u>Gamble</u>, 429 U.S. at 107). Harm under the Eighth Amendment also "does *not* encompass the 'injury' of being convicted and imprisoned." <u>Heck v. Humphrey</u>, 513 U.S. 477, 487 n.7 (1994) (emphasis in original).

Pearson does not claim the nurse's assistance[2] caused his condition to become worse, nor could he do so. He does not claim the denial of his request caused him to experience prolonged mental suffering beyond that which inevitably follows from being involved in traumatic events that lead to serious criminal charges and pretrial detention. <u>Cf. Barker v. Wingo</u>, 407 U.S. 514, 532-33 (1972). Put another way,

---

[2] A nurse, of course, is not a mental health amateur. Pearson actually requested consultation with a specialist or expert.

4

Pearson offers no reason to believe he was suffering significantly more stress, anxiety, or depression than other pretrial detainees.  Therefore, there is no reason to believe that anyone at the jail should have realized his mental health needs were so acute and so much more serious than those of other detainees that an expert had to be called in. The only way Pearson could prevail here is by showing that every county jail is required to provide consultation with a mental health specialist if a detainee requests it.  The Constitution does not require that level of assistance.

This is not a situation where Pearson fails to state a claim due to lack of familiarity with pleading requirements.  The facts he alleges simply do not add up to a violation of the Constitution.  Amendment would be futile.  Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)).  The Complaint should be dismissed for failure to state a claim on which relief may be granted.

Based on the foregoing, the Court enters the following:

## ORDER

The motion to proceed in forma pauperis (doc. 1) is GRANTED.  The Clerk of Court shall waive prepayment of the filing fee.  A collection order is issued separately.

5

The Court also enters the following:

## RECOMMENDATION

1.  The Complaint (doc. 2) should be DISMISSED for failure to state a claim.

2.  The Clerk should be directed to enter, by separate document, a judgment of dismissal.

3.  The docket should reflect that Pearson's filing of this action counts as one strike under 28 U.S.C. § 1915(g).

4.  The district court should CERTIFY, pursuant to Fed. R. App. P. 24(a)(3)(A), that any appeal from its disposition would not be taken in good faith.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Pearson may serve and file written objections to this Findings and Recommendations within fourteen (14) calendar days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Pearson must immediately inform the Court of any change in his mailing address.</u>  Failure to do so may result in dismissal of this case without notice to him.

DATED this 30th day of September, 2010.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

7